IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| DONNA YARBROUGH, Individually, §<br>TROY YARBROUGH, Individually, §<br>and as Parents and as Next Friends §<br>of C.Y., A Minor Child, §<br>§<br>*Plaintiffs*, §<br>§<br>V. §<br>§<br>§<br>SANTA FE INDEPENDENT SCHOOL §<br>DISTRICT; BOARD OF TRUSTEES §<br>OF SANTA FE INDEPENDENT §<br>SCHOOL DISTRICT; DR. LEIGH §<br>WALL, INDIVIDUALLY AND IN HIS §<br>OFFICIAL CAPACITY AS §<br>SUPERINTENDENT; MARK KANIPES, §<br>INDIVIDUALLY AND IN HIS §<br>OFFICIAL CAPACITY AS ATHLETIC §<br>DIRECTOR/HEAD FOOTBALL §<br>COACH; RICHARD DAVIS, §<br>INDIVIDUALLY AND IN HIS §<br>OFFICIAL CAPACITY AS ASSISTANT §<br>FOOTBALL COACH; AND JESS §<br>GOLIGHTLY, INDIVIDUALLY AND §<br>IN HIS OFFICIAL CAPACITY AS §<br>ASSISTANT FOOTBALL COACH §<br>§<br>*Defendants.* § | <br><br><br><br><br><br><br><br><br>CIVIL ACTION NO.: _____<br><br><br><br>JURY DEMANDED |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs Donna Yarbrough, Individually, and Troy Yarbrough, Individually, and as Parents and Next Friends of C.Y., a minor, file this their Original Complaint and complain of the conduct of Defendants Santa Fe Independent School District ("Santa Fe ISD"); Board of Trustees of Santa Fe Independent School District ("Board of Trustees"); Dr. Leigh Wall, Individually and in His Official Capacity as Superintendent of Santa Fe Independent School District ("Dr. Wall"); Mark Kanipes, Individually and in His Official Capacity as Athletic Director/Head Football Coach of Santa Fe

Independent School District ("Mr. Kanipes"); Richard Davis, Individually and in His Official Capacity as an Assistant Football Coach of Santa Fe Independent School District ("Mr. Davis"), and Jess Golightly, Individually and in His Official Capacity as an Assistant Football Coach of Santa Fe Independent School District ("Mr. Golightly"), as follows:

## A. PARTIES

1. Plaintiff, Donna Yarbrough, Individually, as a Parent, and as a Next Friend of C.Y, a minor, is an individual who at all relevant times resided in Santa Fe, Galveston County, Texas.

2. Plaintiff, Troy Yarbrough, Individually, as a Parent, and as a Next Friend of C.Y., a minor, is an individual who at all relevant times resided in Santa Fe, Galveston County, Texas.

3. Defendant Santa Fe Independent School District ("Santa Fe ISD") is a school district organized under the laws of the State of Texas and may be served by and through their Superintendent, Dr. Leigh Wall, at 4133 Warpath, Santa Fe, Texas 77510, or wherever he may be found.

4. Defendant the Board of Trustees of Santa Fe Independent School District ("Board of Trustees") is a committee organized under Santa Fe ISD and may be served by and through their President, J.R. "Rusty" Norman, at 4414 Burditt, Santa Fe, Texas 77510, or wherever he may be found.

5. Defendant Dr. Leigh Wall ("Dr. Wall"), an individual, is the Superintendent of Santa Fe ISD is an individual and may be served with process by serving him at 4133 Warpath, Santa Fe, Texas 77510, or wherever he may be found. Dr. Wall is being sued Individually and in His Official Capacity as Superintendent of Santa Fe Independent School District.

6. Defendant Mark Kanipes ("Mr. Kanipes"), an individual, is the Athletic Director and Head Football Coach of the Santa Fe High School football team and may be served with process by serving him at 803 Forest Bay Court, Houston, Texas 77062, or wherever he may be found. Mr. Kanipes is being sued Individually and in His Official Capacity as Superintendent of Santa Fe Independent School District.

2

7. Defendant Richard Davis ("Mr. Davis"), an individual, is an Assistant Football Coach of the Santa Fe High School football team and may be served with process by serving him at 16000 Hwy 6, Santa Fe, Texas 77517, or wherever he may be found. Mr. Davis is being sued Individually and in His Official Capacity as Superintendent of Santa Fe Independent School District.

8. Defendant Jess Golightly ("Mr. Golightly"), an individual, is an Assistant Football Coach of the Santa Fe High School football team and may be served with process by serving him at 16000 Hwy 6, Santa Fe, Texas 77517, or wherever she may be found.

## B. JURISDICTION AND VENUE

9. This Court has jurisdiction over Plaintiffs' claims pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the Constitution, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

10. Venue is proper under 28 U.S.C. § 1391(b) because the events and omissions giving rise to Plaintiffs' claims occurred in the Sothern District of Texas, Galveston Division.

11. Counsel for Plaintiffs hereby certify that the damages recoverable in this civil action exceed the sum of $500,000.00, exclusive of interest and costs.

## C. INTRODUCTION

12. This is a critically important civil rights case concerning traumatic physical and mental injury a male student athlete sustained. Each year numerous children are injured across the country participating in sporting events. A number of injuries result due to a systemic culture of winning at all costs. Children are marshalled into arenas to battle for championships to the amusement of spectators. The spectators demand winning teams and championships. The school district, school boards, school administrations, and the coaches accede to the spectators' demands for championships. However, in order to win championships, child athletes are subjected to training regimens that disregard their health, safety, and well-being. Drills are conducted in practice that are dangerous and are known to cause long term serious injuries while under the supervision of the coaches.

13. In this case, Plaintiff C.Y., a male high school student at Santa Fe High School, was participating in drills that resulted in repetitive helmet to helmet contact. It is well known that significant long-term injury is likely to occur from helmet to helmet contact. Indeed, due to the known dangers of helmet to helmet contact, the National Football League ("NFL"), the National Collegiate Athletic Association ("NCAA") and the University Interscholastic League ("UIL") have implemented rules that prohibit helmet to helmet contact. Despite knowledge of the dangers of helmet to helmet contact Santa Fe ISD created a danger by failing to effectively enact and enforce a policy to protect student athletes.

### D. STATEMENT OF FACTS

14. C.Y. was born on October 16, 2000.

15. At all relevant times, Donna Yarbrough, Troy Yarbrough and C.Y. resided in the Santa Fe Independent School District in Galveston Count, Texas. Accordingly, at all relevant times, Plaintiff C.Y. was eligible to attend school in Santa Fe ISD.

16. Donna Yarbrough, Troy Yarbrough and C.Y. are zoned to Santa Fe High School, which is the only high school in his district.

17. C.Y. was enrolled in Santa Fe High School in Santa Fe, Texas during the 2016-2017 school year.

18. C.Y. began playing football in Santa Fe ISD in Seventh (7th) grade at Santa Fe Junior High ("SFJH").

19. Prior to the playing football at SFJH, C.Y. was required to have a baseline brain assessment performed as part of a concussion protocol.

20. C.Y.'s brain assessment did not reveal any abnormalities.

21. C.Y. continued to play football in Eighth (8th) grade.

22. C.Y. did not suffer any severe head trauma while playing sports at SFJH.

23. C.Y. enrolled in SFHS for Ninth (9th) grade for the 2015 – 2016 school year.

24. C.Y. continued to play football without injury until his sophomore year.

25. Baseline assessments are common place and required in many private and public schools each year.

26. Santa Fe ISD did not require yearly baseline brain assessment for sports.

27. On September 21, 2016, C.Y. was at football practice.

28. The coaching staff kept records for each player which included such information as the height, weight, and body mass of each player.

29. On the day in question, C.Y. weighed approximately 130 pounds.

30. The player across from C.Y was C.P., who was a defensive tackle and was an older and substantially larger.

31. C.Y. was playing an offensive position, left guard for scrimmages.

32. The ostensible object of the scrimmage was for C.Y. to prevent C.P. from crossing the line of scrimmage.

33. Coaches Jess Golightly and Richard Davis were conducting the scrimmage.

34. Mark Kanipes was the Athletic Director, Head Football Coach, and the supervisor of the football program at SFHS.

35. During the scrimmage, C.Y. and C.P. made helmet to helmet contact numerous times.

36. The coaches observed the students making helmet to helmet contact.

37. C.Y. reported to the trainer, Brooke Griffin, that he was experiencing a severe headache and dizziness.

38. Ms. Griffin filled out an incident report which was provided to Plaintiff Donna Yarbrough.

39. Ms. Griffin advised C.Y. to go home and rest and if symptoms continue the next day to see the trainer.

40. C.Y. went home as directed by the school.

41. The next day, September 22, 2016, he woke with a severe headache and reported to the trainer as directed. The trainer directed him to seek medical treatment.

42. Thereafter, Mrs. Yarbrough took C.Y. to the Houston Methodist Concussion Center ("HMCC") where he was diagnosed with a concussion.

43. The doctors at HMCC ordered C.Y. to undergo an MRI which was performed on November 4, 2016. The MRI showed positive findings consistent with a compression type injury.

44. During this time, C.Y. experienced severe head pain, dizziness and neck pain. Additionally, his family noted mood swings.

45. C.Y. was ordered to stop all physical activity, especially contact sports, which he did.

46. C.Y. continued to attend school but the headaches persisted.

47. Since the date of the incident, C.Y. still experiences severe headaches, along with sensitivity to light and periods of experiencing a bright blinding light sensation. Additionally, he has vision issues and continues to have mood swings, all of which are symptoms of a concussion.

48. C.Y. changed his routine to work outs with his father. He no longer plays football or other contact sports. C.Y. regrets his concussion prevents him from playing football and limits his activity.

49. C.Y still seeks medical treatment for symptoms related to the concussion.

50. Football players who encounter violent and sudden contact with other players in a collision can suffer injuries including, but not limited to, concussions and traumatic brain injuries.

51. Physical signs and symptoms of a concussion include, but are not limited to, headache, nausea, balancing problems, dizziness, visual problems, numbness and/or tingling, and feeling dazed.

52. C.Y. was not properly evaluated by the coaches or athletic trainer, despite the fact that this injury occurred in the open view of the coaches, and during the normal course of practice.

53. At all times pertinent hereto, Defendants knew, or should have known, that traumatic brain injuries, including but not limited to concussions, was a common hazard associated with football activities.

54. At all times pertinent hereto, Defendants knew, or should have known, that traumatic brain injuries, including but not limited to concussions, can occur from violent hits during football games and practices.

55. At all times pertinent hereto, Defendants knew or should have known that allowing student athletes to continue to participate in athletic activities after experiencing concussion and/or traumatic brain injury symptoms posed a significant risk of serious bodily injury and threatened the bodily integrity of said student athletes.

56. At all times pertinent hereto, Defendants knew, or should have known, that traumatic brain injuries, including but not limited to concussions, occurred frequently in football related activities.

57. At all times pertinent hereto, Defendants knew, or should have known, that the bodily integrity of student athletes required proper medical supervision and clearance once an impact was sustained resulting in concussion and/or traumatic brain injury related symptoms.

58. At no time pertinent hereto, did Defendants have a proper policy and/or procedure in place to instruct their student athletes, including but not limited to C.Y., on the causes, hazards, symptoms and dangers of traumatic brain injuries.

59. Defendants failed to enforce and/or enact proper and adequate policies for head injuries resulting from athletic activities.

60. This deliberate indifference to the health, safety and welfare of student athletes in failing to educate said student athletes on the causes, symptoms and dangers of traumatic head injuries was the common policy or custom of Defendants.

61. This deliberate indifference to the health, safety and welfare of their student athletes in failing to medically clear said student athletes was the common policy or custom of Defendants.

62. This deliberate indifference to the health, safety and welfare of student athletes in failing to enforce and/or enact proper and adequate policies for head injuries resulting from athletic activities was the common policy or custom of Defendants.

63. These failures by Defendants were a normal practice, custom or policy and constitute a deliberate indifference to the health, safety and welfare of student athletes of Santa Fe ISD, including, but not limited to, C.Y.

64. Upon the filing of the instant Complaint, C.Y. continues to suffer from serious and permanent effects of his traumatic brain injuries.

65. Defendants acted with willful disregard to C.Y. interest m his bodily integrity and human dignity.

66. Defendants' policies and/or procedures failed to adhere to common industry standards and/or state athletic standards with respect to the evaluation and review of traumatic brain injuries.

67. As a direct result of the previously described actions and inactions of these Defendants, C.Y. suffers and will continue to suffer the following symptoms and conditions: second impact syndrome, traumatic brain injury, slowed motor activity; altered sleep patterns; recurrent headaches and head pain; nausea; dizziness; balance problems; impaired concentration; poor short-term memory; hypersensitivity to light, sounds, mood swings; and overall moderate brain dysfunction suggestive of bilateral diffuse axonal injury secondary to a traumatic brain injury. Defendants collectively acted with a degree of culpability that shocks the conscience of a reasonable person under like circumstances.

68. A relationship between Defendants and Plaintiff existed such that Plaintiff was a foreseeable victim of the Defendants' acts, and was a member of a discrete class of persons subjected to the potential harm brought about by Defendants' actions.

69. Defendants affirmatively used their authority in a way that created a danger to Plaintiff that rendered him more vulnerable to danger than had Defendants not acted at all.

70. Defendants collectively acted with a degree of culpability that shocks the conscience of a reasonable person under like circumstances.

71. A relationship between Defendants and Plaintiff existed such that Plaintiff was a foreseeable victim of the Defendants' acts, and was a member of a discrete class of persons subjected to the potential harm brought about by Defendants' actions.

72. Defendants affirmatively used their authority in a way that created a danger to Plaintiff that rendered him more vulnerable to danger than had Defendants not acted at all.

### E. CAUSES OF ACTION

**(1) VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN DUE PROCESS CLAUSE FOR INJURY AS A RESULT OF A STATE CREATED DANGER ENFORCEABLE VIA 42 U.S.C. §1983.**

**PLAINTIFFS V. ALL DEFENDANTS**

73. All preceding paragraphs are incorporated by reference.

74. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of Defendants that resulted in the injuries suffered by Plaintiff C.Y.

75. All acts taken by defendants were taken under color of law as defined by 42 U.S.C. § 1983, were under the pretense and color of law in their official capacity, and under the pretense of the statutes, ordinances, policies, practices, customs, regulations and/or usages of Defendants and/or the State of Texas.

76.     More specifically, at all times relevant hereto, C.Y. possessed both substantive and procedural due process rights to be free from state occasioned and/or created dangers which caused harm to his bodily integrity and human dignity, and which are protected by the United States Constitution.

77.     It was unreasonable and a violation of their duties and responsibilities for these defendants to ignore C.Y. safety and wellbeing and expose to him serious and traumatic injuries, by requiring him to participate in a practice drill that culminated with numerous significant blows to the head.

78.     It was clearly foreseeable that by instructing C.Y to participate in a drill in practice that required helmet to helmet contact, C.Y. faced a substantial risk of serious harm, and the Defendants failed to take reasonable steps and enact and implement reasonable policies, practices, and procedures to avoid the harm.

79.     At all times material and relevant hereto, defendants were aware of and willfully disregarded the inherent and extreme dangers to student athlete who participate in athletic activities after suffering head injury.

80.     Defendants failed in their positions of authority, under color of state law, to take appropriate steps to minimize the risk of serious injury to football players such as that actually suffered by C.Y.

81.     Defendants took no reasonable or proper steps to prevent or minimize the risk of harm that C.Y. actually suffered, but rather allowed such potentially high risk activity to occur under the above unreasonably dangerous circumstances with willful disregard and/or deliberate indifference for C.Y.'s safety.

82.     C.Y was an obvious member of a class subjected to the harm brought about by the State's actions and/or inactions.

83. By way of Defendants' actions and/or inactions, said defendants utilized their position of authority and power to create a danger to C.Y,, and/or placed C.Y. in a more vulnerable manner to the known risk of harm.

84. The Defendants' actions and/or inactions demonstrated an adopted practice, custom or policy in deliberate indifference to C.Y.'s overall health, safety and welfare.

85. Defendants, by their negligent, grossly negligent, reckless, and other liability producing conduct, their wanton and willful disregard and/or indifference for the safety of C.Y. , and their deliberate indifference to C.Y.s constitutional rights, created a dangerous environment by placing C.Y. back on the field to participate in the football practice after the first collision, thereby increasing the risk of and directly and proximately causing the severe, permanent injuries which were foreseeable, substantially certain to occur and actually suffered by Plaintiff, both generally and in the following respects:

   a. failing to evaluate C.Y. for injuries, despite the fact that all of the incidents pled herein occurred in the open view of the coaches and in the during normal course of practice;

   b. allowing C.Y. to participate in type of the activity on September 21, 2018 which foreseeably would lead to a significant head injury;

   c. instructing C.Y. to continue the scrimmage;

   d. failing to train coaches on safety protocol and indicators of a concussion or other head injury;

   e. allowing improperly trained coaches to be responsible for student athletes' safety during team practices;

   f. failing to have proper procedures in place to identify and treat head injuries and concussions;

   g. violating and failing to comply with all pertinent federal and state statutes, local ordinances and all other rules, enactments or regulations, applicable or in effect, be they administrative, industry-wide or otherwise, pertaining to school athletics;

  h. failing to instruct student athletes, including but not limited to C.Y., on the causes, symptoms and dangers of traumatic brain injuries.

  i. failing to utilize a form of baseline testing to monitor the progression and/or regression of head injuries sustained by student athletes, including but not limited to C.Y.;

  j. failing to appropriately assess C.Y. by neglecting to perform cognitive testing;

  k. failing to perform an impact test on C.Y.;

  l. failing to immediately notify the trainer when it was clear that Plaintiff had sustained injury;

  m. failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans;

  n. failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans commensurate to the hazard of traumatic brain injury resulting from football activities;

  o. failing to take other necessary precautions to prevent accidents, such as C.Y.'s, from occurring; and

  p. failing to understand the risks associated with a traumatic brain injury.

86. Such actions and/or inaction exhibited by Defendants shocks the conscience of a reasonable person under like circumstances.

87. The unlawful and/or improper actions stated herein were taken and/or ratified by final policy makers for Defendants and thus constitute policies, practices, customs and usages sufficient to impose municipal liability.

  j. As a direct and proximate result of the defendants' unconstitutional acts described above, C.Y. sustained severe and grievous injuries and loss of Constitutional rights as described and averred herein.

WHEREFORE, Plaintiffs demand judgment against the Defendants for such damages as may be permitted pursuant to applicable law, together with interest, costs and attorney's fees.

## COUNT II

## VIOLATIONS OF THE UNITED STATES OF AMERICA'S CONSTITUTION UNDER AMENDMENT FOURTEEN - DUE PROCESS CLAUSE FOR INJURY TO HUMAN DIGNITY AND BODILY INTEGRITY ENFORCEABLE VIA 42 U.S.C. §1983

### PLAINTIFFS V. ALL DEFENDANTS

k. All preceding paragraphs are incorporated here by reference.

l. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of Defendants that resulted in the injuries suffered C.Y.

m. Defendants are state actors as defined in 42 U.S.C. § 1983.

n. All acts taken by defendants were taken under color of law as defined by 42 U.S.C. § 1983, were under the pretense and color of law in their official capacity, and under the pretense of the statutes, ordinances, policies, practices, customs, regulations and/or usages of Defendants and/or the State of Texas.

o. At all times mentioned herein and material hereto, C.Y. possessed a liberty interest in the freedom from injury to human dignity and bodily integrity, which rights are secured under the 4th and 14th Amendments to the Constitution of the United States, and by Title 42, United States Code, §1983.

p. The defendants developed policies, practices, and customs which were not in accord with the Constitution of the United States and which were contrary to Federal protection of the safety, rights, health and welfare of C.Y., and/or failed to develop policies, practices, and customs which were in accord with the Constitution of the United States and Federal protection of the safety, rights, health and welfare of C.Y.

q. At all times mentioned herein and material hereto, these defendants, by and through their negligent, grossly negligent, reckless, and other liability producing conduct, their

wanton and willful disregard for the safety of C.Y., and their deliberate indifference to C.Y.s constitutional rights, created a dangerous environment by requiring C.Y. to .

    r.    These Defendants knew or should have known that by running a scrimmage which resulted in numerous helmet to helmet collisions posed a significant risk of serious bodily injury and increased the chances of exacerbating his concussion sustained during the first collision.

    s.    Additionally, defendants acted with deliberate indifference to C.Y.'s constitutional rights and affirmatively acted to create a danger to C.Y., and cause his injuries by:

a. failing to train coaches on safety protocol and indicators of a concussion or other head injury;

b. allowing improperly trained coaches to be responsible for student athletes' safety during team practices;

c. failing to have proper procedures in place to identify and treat head injuries and concussions;

d. violating and failing to comply with all pertinent federal and state statutes, local ordinances and all other rules, enactments or regulations, applicable or in effect, be they administrative, industry-wide or otherwise, pertaining to school athletics;

f. failing to instruct student athletes, including but not limited to C.Y., on the causes, symptoms and dangers of traumatic brain injuries.

g. failing to utilize a form of baseline testing to monitor the progression and/or regression of head injuries sustained by student athletes, including but not limited to C.Y.;

l. failing to appropriately assess C.Y. by neglecting to perform cognitive testing;

m. failing to perform an impact test on C.Y.;

n. failing to immediately notify the trainer when it was clear that Plaintiff had sustained injury;

o. failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans;

p. failing to adopt, enact, employ and enforce proper and adequate safety programs, precautions, procedures, measures and plans commensurate to the hazard of traumatic brain injury resulting from football activities;

q. failing to take other necessary precautions to prevent accidents, such as C.Y.'s, from occurring; and

r. failing to understand the risks associated with a traumatic brain injury.

t. The unlawful actions of the coaches were accepted, adopter, and/or ratified by final policy makers for Defendants and thus constitute policies, practices, customs and usages sufficient to impose municipal liability.

u.  The defendants' conduct and lack thereof placed C.Y. in a dangerous position which was at all times materially foreseeable.

v.  Defendants knew or should have known that their improper policies, procedures and/or customs, and/or their lack of adequate policies, procedures and/or customs would result in injury and denial of constitutional rights to C.Y.

w.  The inadequacy of defendants' existing practices and policies was so likely to result in violation of C.Y.'s constitutional rights that defendants can be reasonably said to have been deliberately indifferent to those rights. As a direct and proximate result of the negligent, grossly negligent, reckless, and other liability producing conduct of defendants and their wanton and willful disregard for the safety of C.Y., which shocks the conscience, C.Y., was caused to suffer those permanent and severe injuries described above, and was deprived of his liberty interest and caused to suffer injury to his human dignity and bodily integrity, without due process of law guaranteed by the 14th Amendment of the United States Constitution.

x.  At all times mentioned herein and material hereto, defendants acted with willful disregard for and/or reckless indifference to C.Y.'s safety, acted with deliberate indifference to C.Y.'s constitutional rights, and rendered C.Y. more vulnerable to serious bodily injury.

y.  The defendants' acts were the proximate cause of C.Y.'s severe and permanent injuries.

z.  Defendants' denial of C.Y.'s rights under the 4th and 14th Amendments was egregious, irrational and objectively unreasonable.

WHEREFORE, Plaintiffs demand judgment against the Defendants for such damages as

may be permitted pursuant to applicable law, together with interest, costs and attorney's fees.

## F. IMMUNITY

43.     Defendants are not entitled to qualified or sovereign immunity because Defendants' actions violate an established constitutional right and Defendants' conduct was objectively unreasonable in light of clearly established law at eh time of the incident.

## G, REQUEST FOR JURY TRIAL

45.     Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rules of Civil Procedure 38, a trial by jury on all issues.

## PRAYER

46.     For the foregoing reason, the Plaintiffs respectfully request that the Court enter judgment against Defendants consistent with the relief requested herein, and for any and all relief Plaintiffs may show they are entitled, including actual damages, nominal damages, court costs, preparation and litigation costs, expert fees, attorney's fee, and for its appeal if required and for such other as this Court may deem just and proper in law and equity.

Respectfully submitted,

**SOUTHERLAND LAW FIRM**

/s/ J. Alfred Southerland
J. Alfred Southerland
State Bar No. 18860050
4141 Southwest Freeway
Suite 300
Houston, Texas 77027
Telephone: (713) 228-8508
Facsimile:   (713) 228-8507
alf@southerlandlawfirm.com

2

**THE CHANDLER LAW FIRM, L.L.P.**

*/s/*

_____
Sherry Scott Chandler
State Bar No. 17915750
Lewis M. Chandler
 State Bar No. 24036350
4141 Southwest Freeway, Suite 300 Houston, Texas 77027
Telephone: (713) 228-8508
Facsimile: (713) 228-8507
sherry@chandlerlawllp.com
lewis@chandlerlawllp.com
**ATTORNEYS FOR PLAINTIFFS**